UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT JACKSON, et al.,

    Plaintiffs,

vs.                                       CASE NO. 3:09-cv-26-J-34TEM

UNITED STATES OF AMERICA,

    Defendant.
_____/

## O R D E R

This matter is before the Court on Defendant's request for oral argument (Doc. #20), which, as discussed below, the Court construes as a motion for protective order. The parties in this case indicated in the Case Management Report ("CMR") (Doc. # 9) that they were unable to agree on a proposal by Defendant to require ten (10) days notice prior to disclosure of any discovery material to third parties. The disputed notice provision would provide as follows:

> The Parties agree to provide opposing counsel at least ten (10) business days notice prior to any disclosure and/or dissemination of pretrial discovery (including but not limited to videotaped deposition testimony) to third parties, excepting the parties' disclosures to their expert witnesses and litigation consultants. The parties further agree not to disclose and/or disseminate said pretrial discovery during the pendency of any motion for protective order. This agreement applies only to information obtained by the parties through use of the discovery process and does not restrict the dissemination of information gained from other sources.

(Doc. #9 at 3-4).

The Court ordered a briefing schedule on the parties' respective positions (Doc. #10)

and heard argument on the matter on July 22, 2009 (Doc. #22, Minutes).[1] For the reasons stated herein, Defendant's request for oral argument (Doc. #20), which the Court construes as a motion for protective order, is granted to the extent oral argument was heard but shall be denied to the extent it seeks a protective order.

## I. Background

Plaintiffs' complaint alleges Plaintiff, Robert Jackson, presented himself to the Emergency Department at the Naval Hospital of Jacksonville on July 26, 2006 with complaints of abdominal pain (Doc. #1 at 2). Jackson was evaluated and discharged with a diagnosis of abdominal pain (Doc. #1 at 3). Jackson returned to the Emergency Department on July 29, 2006, and was again evaluated and discharged (Doc. #1 at 3). Jackson returned to the Emergency Department on July 31, 2006 and was subsequently admitted for further evaluation and treatment (Doc. #1 at 3). On August 2, 2006, while still admitted to Naval Hospital, Jackson was transferred to Shands Jacksonville where he underwent emergency surgery for a perforated appendix (Doc. #1 at 3). Following surgery, Jackson suffered a stroke, which Plaintiffs allege was the result of medical malpractice on the part of the Naval Hospital of Jacksonville (Doc. #1 at 3).

Plaintiffs' counsel, Sean B. Cronin, Esq., is a Jacksonville area attorney who has represented multiple plaintiffs in medical malpractice suits against the Naval Hospital of Jacksonville. In two prior suits, Mr. Cronin held press conferences and released videotaped depositions of Naval Hospital doctors taken for the purpose of litigation. *See*

---

[1] The Court was made aware of the disputed notice provision contained within the CMR and ordered a briefing schedule prior to Defendant filing its request for oral argument (Doc. #20). Furthermore, the non-transcribed recording of the hearing is hereby incorporated by reference. The parties may contact the Courtroom Deputy of the undersigned if a transcript of the hearing is desired.

*Archibal Caolie v. United States*, Civil Action No. 3:07-cv-1183-J-34HTS (M.D. Fla. Dec. 14, 2007); *Foster v. United States*, Civil Action No. 3:03-cv-664-J-20TEM (M.D. Fla. Sept. 12, 2003). These depositions were released to the press while litigation was ongoing and were apparently edited to highlight possible medical malpractice on the part of the Naval doctors.[2] Said doctors purportedly were annoyed and embarrassed by seeing portions of their deposition testimony broadcasted on the evening news (Doc. #19 at 4). Mr. Cronin maintains he did not release the depositions to embarrass the doctors or advance his career (Doc. #16 at 3). Rather, it is Mr. Cronin's position that the depositions were released because they concerned a matter of public safety, especially since area military members are required to obtain medical care at this government hospital (Doc. #16 at 3).

## II. Discussion

As an initial matter, although Defendant maintains its proposed notice requirement is not tantamount to a protective order, the Court is not persuaded. A protective order is "[a] court order *prohibiting or restricting a party from engaging in conduct (*esp. a legal procedure such as discovery) that unduly annoys or burdens the opposing party or a third-party witness." BLACK'S LAW DICTIONARY 1343 (9th ed. 2009) (emphasis added). Here, Defendant seeks to require that Plaintiffs provide it notice prior to disclosing any discovery related material to third parties (Doc. #9 at 3-4). Plaintiffs refuse to agree to any such notice provision. Since Defendant seeks to impose said restriction upon Plaintiffs, the Court finds Defendant presently seeks a protective order.

---

[2] It is not clear whether Mr. Cronin edited the materials or news media edited them in the normal course of producing a television news program. Mr. Cronin also was said to have posted some of the materials on his law firm's website.

Moreover, the instant proposed notice provision is similar to the upheld, agreed to protective order entered into in *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 354 (11th Cir. 1987). Under the terms of the protective order in *In re Alexander Grant*, any material designated "confidential" was only available to the parties for use in litigation, and was inaccessible to any non-parties. A party challenging a "confidential" designation could seek judicial review by making an objection. Once a notice of an objection was received, the party seeking to protect the sensitive material had ten days to apply to the district court for a ruling on the merits.[3] In *In re Alexander Grant*, the protective order covered only the material the parties labeled "confidential," whereas here the proposed notice provision seeks to cover <u>all</u> pretrial discovery.

In their memorandum of law and at the hearing, Plaintiffs made several arguments against Defendant's proposed notice requirement contained within the CMR. Specifically, Plaintiffs argue: (1) no "good cause" has been shown for such a protective order under Rule 26(c) of the Federal Rules of Civil Procedure; (2) such a restriction would be an unconstitutional prior restraint under the First Amendment to the United States Constitution; and (3) government operations should be open to the public (Docs. #16 and #22).

Conversely, Defendant argues that good cause does exists for the Court to impose the subject notice requirement upon Plaintiffs because: (1) in two prior cases, Mr. Cronin released segments of videotaped depositions of Naval doctors to the news media without prior notice, which caused surprise and harm to those doctors; (2) the potential government witnesses in this action are non-parties, and therefore, will not have a voice with respect

---

[3] The full text of the protective order appears in *In re Alexander Grant & Co. Litigation*, 629 F. Supp. 593, 595-97 (S.D. Fla. 1986).

to the ultimate outcome of the litigation; (3) in the prior actions, *supra*, personal information such as home addresses were released to the public and the doctors did not even have an opportunity to review the deposition(s) so they could prepare errata sheets, if needed; therefore, the prospect for annoyance and embarrassment is substantial in this instance; and (4) because of various privacy laws, such as the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), doctors are unable to respond publically, even if the information released to the press is misleading (Docs. #19 and #22).

A court may enter a protective order upon motion of a party "for good cause shown." FED. R. CIV. P. 26(C). The Court must evaluate and balance the interests of the parties and non-parties concerning dissemination of discovery material against the public's interest in gaining access to the information. *In re Alexander Grant,* 820 F.2d 352 at 355-57. Further, a court may enter a protective order when it is necessary to expedite the flow of discovery material, promote prompt resolution of disputes over confidentiality, or facilitate the preservation of material arguably worthy of protection. *See McCarthy v. Barnett Bank of Polk County*, 876 F.2d 89, 91 (11th Cir. 1989); *In re Alexander Grant*, 820 F.2d at 356.

At the outset, the Court would note that a party, or non-party, to a law suit possess no First Amendment rights to information that has been protected pursuant to the provisions of Fed.R.Civ.P. 26(c). *In re Alexander Grant*, 820 F.2d at 355. The discovery process, as a "matter of legislative grace," is a statutorily created forum not traditionally open to the public. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 32 (1984). Although information exchanged in pretrial discovery would often generate considerable public interest if publicly disseminated, private litigants (and third-party witnesses) have

protectable privacy interests in information disclosed through discovery. *See id.* at 35.[4]

In *In re Alexander Grant*, the Eleventh Circuit upheld an agreed to protective order that was challenged by an intervening newspaper publisher and a journalist employed by the publisher. 820 F.2d at 354. The intervenors maintained their First Amendment rights were being violated because they could not gain access to the documents designated "confidential" under the parties' agreed protective order. *Id.* In explaining its reasons for upholding the protective order, the court stated, *inter alia*:

> First, appellants [intervenors] have no common-law right to examine the discovery materials at issue. There is no question that the press and the public jointly possess a common-law right to inspect and copy judicial records and public documents. Nevertheless, this court has observed that private documents collected during discovery are not judicial records. Thus, while appellants may enjoy the right of access to pleadings, docket entries, orders, affidavits or depositions duly filed, appellants' common-law right of access does not extend to information collected through discovery which is not a matter of public record.

*Id.* at 355 (internal quotations and citations omitted).

In *Seattle Times Co.*, after evaluating and balancing the competing public and private interests, the Supreme Court concluded that valid protective orders are not violative of the First Amendment because Rule 26(c) minimizes abuse of the discovery process—which is a substantial government interest unrelated to the suppression of expression. 467 U.S. at 34.

---

[4] Plaintiffs cite *Flaherty v. Seroussi* for the proposition that some lower courts have found occasional exception in cases involving public officials, or where there is a strong public interest favoring the free dissemination of discovery; however, the Court is not persuaded by this argument. 209 F.R.D. 295, 296 (N.D.N.Y. 2001). In *Flaherty*, the individual who was denied a protective order was an elected city official who was a party to the suit—not a third-party witness. *See id.* at 300. In addition, although the hospital involved is operated for military personnel, the Court does not find, for the purposes of this Order, that the potential discovery in this cause is a matter of extreme public interest *at this time*. First, there has been no testimony yet. Second, the acts on which the complaint is based occurred three years ago. Third, there is a strong possibility that at least some of the medical personnel involved are no longer at the hospital. Lastly, the hospital administration may have undergone changes since the incident(s) at issue occurred.

Nevertheless, with respect to the instant motion, the Court finds Defendant has not shown "good cause" for the issuance of the proposed notice requirement/protective order under the factors set forth in *In re Alexander Grant*, which are: (1) the severity and the likelihood of the perceived harm; (2) the precision with which the order is drawn; (3) the availability of a less onerous alternative; and (4) the duration of the order. 820 F.2d at 356.

As to the severity and likelihood of the perceived harm, the Court would note that no trade secrets or confidential information are at issue here and the concern over possible embarrassment to the government's potential witnesses is premature at this juncture since the parties represented at the hearing that, although some depositions have been noticed, depositions have not yet taken place. Defendant has pointed to no specific information that would be worthy of protection at this time.

With respect to the precision in which the order is drawn, the Court finds the language of the notice provision is all encompassing, and not even limited to information designated "confidential" as in *In re Alexander Grant*, *supra*. Specifically, the proposed language of the notice provision provides: "[t]he Parties agree to provide opposing counsel at least ten (10) business days notice prior to *any disclosure and/or dissemination of pretrial discovery (including but not limited to videotaped deposition testimony)* to third parties, excepting the parties' disclosures to their expert witnesses and litigation consultants." (Doc. #9 at 3-4). This provision covers <u>all</u> pretrial discovery, not just videotaped deposition testimony of Naval doctors. Accordingly, the Court finds the proposed language of the notice provision is too broad and not narrowly tailored.

As to the duration of the order, there is no time limitation present in the language of the notice provision; thus, it appears to be indefinite. As to the availability of a less onerous

7

alternative, Defendant's argument that it is less onerous for Plaintiffs to provide Defendant notice prior to disseminating any pretrial discovery than for Defendant to have to file for a protective order every time discovery materials are exchanged is cogent; however, as stated above, the Court finds the notice provision is premature at this juncture and its language is too broad, as it covers all discovery.  Although Mr. Cronin has reached agreement with the United States in several prior cases not to release deposition testimony without first providing notice, these agreements were apparently more narrowly tailored and Plaintiffs' counsel has not agreed to any such provision in the instant case.

However, without such an agreement (or Court order) the possible result is that each time a discovery item is exchanged or a deposition is taken, Defendant may file a motion for a protective order, necessitating a response, and perhaps a Court hearing.  Obviously this is not an ideal situation under the Federal Rules of Civil Procedure, which are intended to allow each party to obtain discovery with a minimum of Court supervision.  *See Bush Ranch, Inc. v. E.I. DuPont De Nemours & Co.*, 918 F. Supp. 1524, 1542 (M.D. Ga. 1995), *rev'd on other grounds*, 99 F.3d 363 (11th Cir. 1996).

Nonetheless, at this stage of the litigation, the Court does not believe there is good cause for issuance of the requested protective order at this time.  Since Plaintiffs' counsel has released deposition testimony in only two prior actions since 2003, the Court is not willing to presume he will do so in this instance.

Should counsel for Defendant ask, after certain, or all, depositions or other discovery, whether Plaintiffs' counsel intends to release said discovery material(s) publically, and does not obtain an answer satisfactory to defense counsel, she would, of course, be free to seek a protective order.  The Court will not presume, at this point, that

the attorneys would not act with appropriate professionalism at such junctures. The Court remains hopeful that the parties may still reach private agreement as to the handling of these issues. Although the Court will not rule in advance that any release of discovery information would be improper, without knowing the particular facts involved, it certainly should be clear to the parties that the Court finds it difficult to believe that wholesale release of discovery materials, including videotaped depositions, that includes home addresses or other personal identifiers of non-party witnesses, or medical data as to non-parties, would be appropriate.

As the Court indicated at the hearing, the relationship between doctors and attorneys is important. Lawyers often need doctors to attempt to prove, or defend, their case. Doctors need to be able to spend their time performing patient care, with a minimum of interference. Acts that unnecessarily interfere with those activities impede both occupations, and discourage cooperation that may be needed at other times. One sentence in the Oath of Admission to the Florida Bar states: "I will abstain from all offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged . . . ." The Florida Bar, http://www.floridabar.org/tfb/TFBProfess.nsf/5d2a29f983dc81ef85256709006a486a/04e9eb581538255a85256b2f006ccd7d?OpenDocument (last visited Aug. 4, 2009).

In sum, the Court declines, at this time, to enter an order requiring advance notice as suggested by Defendant, but without prejudice to any further motion either counsel may deem appropriate during the course of litigation.

### III. Conclusion

Accordingly, and for the reasons stated herein, it is hereby **ORDERED**:

Defendant's request for oral argument (Doc. #20), which the Court construes as a motion for protective order, is **GRANTED to the extent** oral argument was heard **but shall be DENIED to the extent** it seeks a protective order.

**DONE AND ORDERED** at Jacksonville, Florida this 6th day of August, 2009.

Copies to all counsel of record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge